UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TDH PARTNERS LLP, Individually and On Behalf of All Others Similarly Situated, | § § § § § | 3:04-CV-0073-B |
| Plaintiff, | § § § § | Consolidated with: 3:04-CV-0397-B 3:05-CV-0231-B |
| v. | § § | 3:06-CV-0022-B |
| RYLAND GROUP, INC., et al., | § § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Before the Court are: 1) Plaintiff Alldian's Motion for Substitution of Lead Plaintiff, or in the Alternative, Appointment of Jennifer Alldian as Lead Plaintiff (doc. 40); 2) Plaintiffs' Motion for Reconsideration, or in the Alternative, Motion for [sic] Amend or Alter This Court's September 1, 2005 Order (doc. 41); and 3) the parties' briefing regarding the viability of Plaintiffs' claims in the wake of this Court's dismissal of the Consolidated Action Complaint on September 1, 2005. Having considered the parties' briefing and applicable legal authorities, for the following reasons the Court finds that Plaintiff Jennifer Alldian should be substituted as lead plaintiff in this matter. Accordingly, the Court GRANTS Plaintiff Alldian's Motion for Substitution and GRANTS in part Plaintiffs' Motion for Reconsideration.

### I. Factual and Procedural Background

This is a consolidated securities class action lawsuit against Ryland Group, Inc. ("Ryland") and two of its officers brought on behalf of various purchasers of Ryland stock from October 3, 2003 to January 7, 2004 (the "Class Period"). Plaintiffs allege that Ryland, a nationwide home builder,

misrepresented the level of the company's new home orders during the Class Period and that these misrepresentations artificially inflated the price of Ryland stock. (*See generally* Consolidated Am. Class Action Compl. ["CAC"]). According to Plaintiffs, the rosy sales picture that Ryland publicly presented during the Class Period assumed a decidedly darker aspect the day after that period ended – January 8, 2004 – when Ryland announced a decline in fourth quarter home sales caused by a pronounced decline in the number of orders emanating from Ryland's key Texas market. (CAC at ¶¶ 19-23). Plaintiffs allege that these revelations caused the price of Ryland stock to drop from $83.05 per share on January 7, 2004 to $72.89 per share the following day on January 8. (CAC at ¶ 57).

On January 15, 2004, TDH Partners, LLP ("TDH") filed the first class action suit against Ryland and published notice of the suit on *PR Newswire* that same day. *See TDH Partners, LLP v. Ryland Group, Inc. et al.*, 3:04-CV-0073-G. Similar class action complaints soon followed: *DuBray v. Ryland Group, Inc. et al.*, 3:04-CV-0397-G (filed February 24, 2004) and *Cucinotta[1] v. Ryland Group, Inc., et al.*, 3:04-CV-0541-M (filed March 15, 2004). The *DuBray* and *Cucinotta* Actions were transferred to Judge Fish and consolidated with the *TDH* Action on April 5, 2004. Two individuals – Lorra Rudman and Susan Cucinotta – filed motions to be appointed lead plaintiff within 60 days of the publication of notice. Although Rudman and Cucinotta later stipulated to serve as co-lead plaintiffs and to have their respective counsel serve as co-lead counsel and liaison counsel, by order entered May 20, 2004, Judge Fish determined that Cucinotta alone was the most adequate plaintiff under the PSLRA and accordingly appointed her lead plaintiff. (May 20, 2004 Memorandum Order

---

[1] To be precise, this case was filed by Susan Cucinotta, Trustee of Robert Cucinotta Irrevocable Reversionary Trust U/T/D 11/30/2001.

at 14). Cucinotta's chosen counsel, Brodsky & Smith, L.L.C., was tabbed as lead counsel. (*Id.* at 14-15). On July 6, 2004, Plaintiffs filed the CAC to which only Cucinotta and Rudman joined as Plaintiffs. (CAC at ¶ 6). The consolidated *TDH* Action was transferred to this Court on July 19, 2004.

Defendants filed a motion to dismiss the CAC on September 24, 2004, grounded in part on the argument that Plaintiffs failed to allege "loss causation" because both Cucinotta and Rudman purchased and sold their Ryland stock prior to the corrective disclosure that occurred on January 8, 2004.[2] After Defendants' motion to dismiss was filed, on March 2, 2005, Jennifer Alldian filed another class action complaint against Defendants asserting substantially the same facts that were alleged in the consolidated actions. (*Alldian v. Ryland Group, Inc. et al.*, 3:05-CV-0231-B (filed Feb. 2, 2005). Upon Plaintiffs' motion, the Court consolidated the *Alldian* Action with the *TDH* Action on March 7, 2005.

The Court held a hearing on Defendants' motion to dismiss on August 31, 2005, at which the Court concluded, following *Dura*, that the Plaintiffs' CAC failed to adequately allege loss causation. Accordingly, the Court entered an order on September 1, 2005 dismissing the CAC; however, the Court afforded the parties an opportunity to submit briefs on the issue of whether Plaintiffs should be able to resuscitate their case by allowing Plaintiff Alldian to replace Cucinotta as lead plaintiff. Since that briefing was submitted, another action has been filed against Ryland.

---

[2] Simply stated, "loss causation" is a term of art in securities law that describes the causal connection that a plaintiff must establish between the material misrepresentation(s) made by the defendant and the loss suffered by the plaintiff. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005). In *Dura*, the Supreme Court held that a plaintiff cannot satisfy the loss causation requirement simply by alleging in the complaint and later proving that the price of the securities purchased were inflated on the date of purchase because of the misrepresentation; rather, a plaintiff must "adequately allege and prove the traditional elements of causation and loss." *Id.* at 346.

3

(*See Pipefitters Local No. 636 Defined Benefit Plan v. Ryland Group et al.*, 3:06-CV-0022-P (filed Jan. 5, 2006). The *Pipefitters* Action has been transferred to this Court and consolidated with the *TDH* Action.

## II.  Analysis

**A.      The Appointment of a Lead Plaintiff Under the PSLRA**

Congress enacted the PSLRA to curb perceived abuses in securities fraud lawsuits. *See* 7B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1806 (3d ed. 2005). Of concern was the reality that lawyers, not investors, were in many cases driving such litigation, resulting in the filing of strike suits brought on behalf of only nominally interested plaintiffs. *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 191 (1st Cir. 1999). As part of the effort to ensure that the reins of litigation remain in the hands of investors rather than lawyers, the PSLRA established a statutory mechanism for the appointment of a "lead plaintiff" and "lead counsel". *In re Tyco Int'l, Ltd.*, 2000 WL 1513772, at *1 (D.N.H. Aug. 17, 2000).

The first part of the appointment process requires a securities fraud plaintiff to provide notice of the suit to potential class members. Within 20 days of filing the complaint, a plaintiff must publish "in a widely circulated national business-oriented publication or wire service" a notice that: 1) advises purported class members that an action has been filed; 2) describes the claims being asserted; 3) defines the class period; and 4) advises purported class members that they may file a motion to be appointed "lead plaintiff" so long as the motion is filed within 60 days after the publication of notice (the "60 day period"). 78 U.S.C. § 78u-4(a)(3)(A)(I). If multiple class actions are filed asserting substantially the same claims, only the plaintiff in the first-filed action need publish notice. 78 U.S.C. § 78u-4(a)(3)(A)(ii). Any potential class member, not only those that are named as plaintiffs

in a complaint, can move to be appointed lead plaintiff. 78 U.S.C. § 78u-4(a)(3)(B)(I).

The court must ordinarily consider motions for appointment within 90 days after the publication of notice. 78 U.S.C. § 78u-4(a)(3)(B)(I). If a motion to consolidate multiple, substantially similar actions has been filed, however, the court must defer appointing a lead plaintiff until ruling on the consolidation issue. 78 U.S.C. § 78u-4(a)(3)(B)(ii); *See* MANUAL FOR COMPLEX LITIGATION § 31.31 (4th ed. 2005) (noting that the PSLRA's time constraints are modified when a motion to consolidate multiple actions has been filed). After a decision on consolidation is made, the court must appoint a lead plaintiff "as soon as practicable." *Id*. The statute instructs the court to appoint as lead plaintiff the member of the putative class that is "most capable of adequately representing the interests of class members." 78 U.S.C. § 78u-4(a)(3)(B)(I). The PSLRA creates a presumption that this is the person or group of persons that: 1) has either "filed the complaint" or moved to be appointed lead plaintiff in response to the publication of notice; 2) has the largest financial interest; and 3) meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. 78 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted, however, when a member of the proposed class proves that the presumptive "most adequate" plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 78 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As recounted in the procedural history described above, these requirements were originally complied with here, and Cucinotta was determined to be the most adequate plaintiff. However, in the wake of this Court's determination that lead plaintiff Cucinotta's claims, and the CAC as a whole, should be dismissed for failure to allege loss causation, the class is presently without a lead plaintiff and without a consolidated class complaint. As a result, Plaintiffs now seek to substitute

5

Alldian as lead plaintiff, who purportedly does not suffer from the same loss causation problems that plagued Cucinotta and Rudman. Defendants challenge this substitution, claiming that the Court's dismissal of the CAC terminated this action in its entirety and that, in any event, Alldian is barred from moving to be appointed lead plaintiff because she did not comply with the PSLRA's strict time requirements dealing with lead plaintiff appointments.

Defendants urge the Court to deny Alldian's motion for substitution because she did not move to be appointed lead plaintiff within 60 days after TDH first published notice of its class action suit on January 15, 2004. Defendants posit that the 60 day period is mandatory and should be strictly enforced. Some cases appear to support this view. In *In re Telxon Corp. Securities Litigation*, a large pension fund established for the benefit of Florida government employees and retirees – the Florida State Board of Administrators ("FSBA") – originally moved to intervene and for appointment as lead plaintiff within the 60 day window. 67 F.Supp.2d 803, 817 (N.D. Ohio 1999). In the motion the FSBA asserted a $428,000 loss. *Id.* The FSBA later filed a complaint outside the 60 day period asserting a much larger loss based on an extended class period. *Id.* at 817-18. In ruling on various competing motions for appointment as lead plaintiff the court held that the size of the FSBA's loss must be measured solely by the loss it originally claimed in its timely filing rather than the much larger loss it later alleged in the complaint filed outside the 60 day period. *Id.* at 818. In so holding the court stated that

> [t]he PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action. The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed.
>
> The PSLRA imposes strict time requirements. It even requires that the Court

*consider* any motion for lead plaintiff within ninety (90) days of the date on which notice is published. The obvious intent of these provisions is to ensure that the lead plaintiff is appointed at the earliest possible time, and to expedite the lead plaintiff process.

*Id.* at 818-19. Notwithstanding its declaration that the PSLRA's deadlines are "unequivocal", the court nevertheless noted that if the putative lead plaintiff's loss were only nominal, "then the court might be forced to reopen applications for lead plaintiff to others." *Id.* at 824 n.37. Thus, the *Telxon* Court implicitly suggested that the PSLRA's deadlines are not entirely inflexible. *See Coopersmith v. Lehman Bros., Inc.*, 344 F.Supp.2d 783, 792 (D.Mass. 2004) (noting that *Telxon* "recognized that circumstances might necessitate adjustments to the PSLRA's schedule.").[3]

Defendants also cite to *In re Enron Corp. Securities Litigation*, 206 F.R.D. 427 (S.D. Tex. 2002). In *Enron*, the FSBA and NYC Funds, another large pension fund, joined together and moved to be appointed lead plaintiff after the 60 day deadline. *Id.* at 435, 440. The court's analysis with respect to their motion centered around its concern that the two funds' effort to be grouped together was simply a manipulative device aimed to either vault their losses beyond those of any other applicant or to mitigate the FSBA's apparent deficiencies as a lone applicant. *Id.* at 454-55 (stating that the FSBA and NYC Funds failed to persuade the court "that they are the kind of cohesive group envisioned by the statute for Lead Plaintiff."). While, citing *Telxon*, the *Enron* Court did mention in passing that the supplemental joint motion for appointment filed by the FSBA and NYC Funds

---

[3] The *Telxon* Court's decision to not permit the FSBA to supplement its motion for appointment beyond the 60 day window was also motivated in part by equitable concerns. The court noted that the information contained in the FSBA's original motion must control because the other groups competing for lead plaintiff status did not calculate their losses based on the expanded class period alleged in FSBA's supplemental filing, and to allow other parties seeking appointment to file supplemental briefs addressed to the losses they allegedly suffered during the enlarged class period would only serve to further delay the appointment process. *Id.* at 819 n. 28.

7

was untimely, its decision to deny the motion did not appear to rest exclusively on the fact that it was filed after the 60 day period had expired. *Id.* at 455.

Thus, neither *Telxon* nor *Enron* stand unreservedly for the proposition that the 60 day period can *never* be extended, and neither opinion addressed the precise question currently facing this Court – whether a court may appoint a substitute lead plaintiff where the claims of the previously appointed lead plaintiff fail as a matter of law. The court in *In re Initial Public Offering Securities Litigation* (the "*IPO Litigation*"), upon which Plaintiffs chiefly rely, confronted a more similar situation. 214 F.R.D. 117, 119-21 (S.D.N.Y. 2002). There, after the expiration of the 60 day period, the initial lead plaintiff withdrew and other plaintiffs in consolidated actions sought to pick up the lead plaintiff baton. Recognizing that the PSLRA constrains a judge's discretion in appointing a lead plaintiff, the court nevertheless concluded that the Act does not prevent a court from substituting a lead plaintiff when the previously appointed one falters or withdraws:

> The PSLRA is entirely silent on the proper procedure for substituting a new lead plaintiff when the previously certified one withdraws. It only stands to reason that the appropriate lead plaintiff would be the next "most adequate" plaintiff in accordance with the [PSLRA] criteria; the proper application of that criteria, however, is somewhat affected by the fact that these movants seek to replace already certified lead plaintiffs.

*Id.* at 120. Without explicit direction from the PSLRA, the court deemed timely any movant for lead plaintiff status who 1) filed a complaint in the consolidated actions; 2) moved for appointment as lead plaintiff in response to the originally published notice; or 3) moved to be appointed lead plaintiff within 60 days of the previous lead plaintiff's withdrawal. *Id.*[4]

---

[4] In a subsequent opinion, the *IPO Litigation* Court made clear that substitutions should also be permitted in appropriate circumstances where the lead plaintiff lacks standing to pursue class claims. *See In re Initial Public Offering Sec. Litig.*, 2004 WL 3015304, at *1, 3, 7 (S.D.N.Y. Dec. 27, 2004) (granting

Contrary to the implication suggested by Defendants, the *IPO Litigation* Court is not alone in allowing lead plaintiff appointments after the 60 day period. For example, in *Coopersmith v. Lehman Brothers, Inc.*, the Massachusetts district court held that the PSLRA does not strictly limit the pool of potential lead plaintiffs to those that filed motions within 60 days of the publication of notice. 344 F.Supp.2d 783 (D.Mass. 2004). In *Coopersmith*, an investor, Terry Swack, originally filed a class action suit against Lehman on May 14, 2003 and published the requisite notice that same day. *Id.* at 787. Swack was the only party to timely move for appointment as lead plaintiff. After the expiration of the 60 day period, on August 13, 2003, the district court denied Swack's motion, finding that she was not the most appropriate party to serve as lead plaintiff because she had obtained her securities through a private transaction as opposed to purchasing them on the open market. *Id.* at 787-88. On November 10, 2003, another investor, Robert Coopersmith, filed a class action lawsuit against Lehman and filed a motion to be appointed lead plaintiff on January 9, 2004. *Id.* at 788. That same day Swack moved to consolidate her case with Coopersmith's. *Id.*

The obvious question was whether Coopersmith's motion for appointment as lead plaintiff could be considered by the court given that it was filed well beyond the 60 day period. *Id.* at 789. The court recognized that would-be lead plaintiffs like Coopersmith are often loath to file motions for appointment where another party asserting a greater loss has already done so. *Id.* at 790. Given that decisions on motions for appointment necessarily come only after the expiration of the 60 day period (to allow for consideration of all motions filed), if the application filed by the party asserting the greater loss is ultimately denied, then the specter of a class without the possibility of a lead

---

plaintiffs' motion to substitute lead plaintiffs where the original lead plaintiffs lacked standing to sue because they did not purchase securities during the class period).

9

plaintiff would be raised if no party that failed to file a motion within the 60 day period could ever be appointed lead plaintiff.

The *Coopersmith* Court refused to countenance such a result, turning for support to the text of the PSLRA itself and the cases construing it. The court noted that the PSLRA provides that the most adequate plaintiff is presumed to be either the person (or group of persons) that has "filed the complaint" *or* the person (or group of persons) that moved for appointment as lead plaintiff within the 60 day period. *Id.* at 790-91. The use of the disjunctive in the statute, the court found, suggests that the filing of a motion within the 60 day period is just one of the two avenues by which a class member may become lead plaintiff – the statute also contemplates that the person who has "filed the complaint" may be appointed. 15 U.S.C. § 78u-4(B)(iii)(I)(aa). Although the statute refers to the filing of "the" complaint, as opposed to "a" complaint, courts have interpreted this provision to refer to any of the individual complaints that have been filed. *See id.* at 791; *In re Microstrategy Inc. Sec. Litig.*, 110 F.Supp.2d 427, 433 (E.D. Va. 2000) ("Although the plural of 'complaint' is not used, it is nonetheless apparent that in this context the term refers to any of the individual complaints filed."); *Skwortz v. Crayfish Co., Ltd.*, 2001 WL 1160745, at *5 (S.D.N.Y. Sept. 28, 2001) ("Where there is not a timely motion before the court, the PSLRA directs this Court's attention to the plaintiffs that have "filed [a] complaint."). Because Coopersmith had filed a complaint, the court found that he was not foreclosed from serving as lead plaintiff notwithstanding his failure to file a motion within the 60 day period. *Id.* at 792. To hold otherwise, the court noted, would be inconsistent with the purpose of the PSLRA, which "does not require speed over due consideration of appropriate candidates." *Id.*

The *Coopersmith* Court further explained that

> the fact that the appointment of lead plaintiff is not to be made until after rulings are made on motions to consolidate is further evidence that the requirement of filing a motion for appointment as lead plaintiff within 60 days of the initial notice is not sacrosanct. The later filed cases do not need to republish any notice. It is obvious that the consolidation issue may arise after the initial 60 day period has expired, yet it is equally obvious that the participants in, and facts of, the later filed suits are to be considered by the court in selecting the lead plaintiff.

*Id.* at 791.

This Court finds that the greater weight of the case authority and the structure of the PSLRA itself supports the view that the Act does not foreclose from consideration as lead plaintiff those class members that did not file a motion for appointment within 60 days of the original publication of notice. Accepting this premise *arguendo*, Defendants nevertheless argue that the Act requires the Court to appoint a lead plaintiff within 90 days of the publication of notice. (Defs.' Resp. in Opp. to Pls.' Mots. to Reconsider and to Substitute or Appoint Jennifer Alldian as Lead Plaintiff ["Defs.' Resp. Brief"] at 3 n.1). Because Alldian did not file her complaint within that time frame, Defendants contend that she is barred from serving as lead plaintiff. As discussed above, however, the PSLRA's timing provisions simply do not address situations where the lead plaintiff, for whatever reason, withdraws or is otherwise disqualified from serving as lead plaintiff. The Court finds that allowing lead plaintiff substitutions in appropriate circumstances serves the purposes that the PSLRA was designed to address and does not run afoul of its express provisions.

**B.     Did Alldian Unduly Delay in Moving for Substitution?**

Having found that the Court has the *power* to appoint a lead plaintiff more than 60 or 90 days after the original publication of notice, the Court must still determine whether Alldian is an appropriate substitute under the circumstances of this case. Even assuming that lead plaintiffs may be appointed beyond the 60 day time limitation imposed by the PSLRA, Defendants argue that

Alldian's motion for substitution should nevertheless be denied because she has failed to provide a legitimate justification for the delay in filing her motion. For her part Alldian explains that she did not originally move for appointment as lead plaintiff because 1) at that time Cucinotta was undisputably the plaintiff with the largest financial loss; and 2) pre-*Dura*, there was an absence of Fifth Circuit precedent on the loss causation issue and hence an inadequate basis to challenge Cucinotta's status as the court-appointed lead plaintiff.

The Court understands that class members in Alldian's position may be dissuaded from moving for lead plaintiff status where other plaintiffs with much greater losses have applied. *See Coopersmith*, 344 F.Supp.2d at 790. This still does not mean, however, that Alldian did not have a reasonable basis for challenging Cucinotta's appointment. Alldian claims that she did not do so during the original 60 day period because the Fifth Circuit had not yet addressed the issue of whether a plaintiff could meet the loss causation requirement by simply alleging that she purchased securities at an inflated price as a result of the defendant's misrepresentation. She further contends that "there was a reasonable basis to believe that Plaintiffs' position [*i.e.* Cucinotta's] on loss causation represented the 'majority view' of circuit courts." (Pls.' Resp. to Sept. 2, 2005 Order at 14). The latter statement is belied by the Supreme Court's notation that the Ninth Circuit's view of loss causation articulated in its *Dura* decision, upon which Plaintiffs' relied, differed "from those of other Circuits that have considered this issue[.]" *Dura*, 544 U.S. at 340 (citing *Emergent Capital Investment Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 198 (2d Cir. 2003); *Semerenko v. Cendant Corp.*, 223 F.3d 165, 185 (3d Cir. 2000); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447-48 (11th Cir. 1997); *Bastian v. Petren Res. Corp.*, 892 F.2d 680, 685 (7th Cir. 1990)). And regardless of whether Plaintiffs' position was in keeping with the majority view, the relevant question is not whether

12

Defendants' loss causation defense ultimately would have defeated Cucinotta's claims, but rather whether Cucinotta was at least *subject* to a defense to which other class members were not. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb); *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. at 456; *In re Peregrine Sys., Inc. Sec. Litig.*, 2002 WL 32769239, at *6-7 (S.D. Cal. 2002) (both citing *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989)). There is no question that Cucinotta was subject to a loss causation defense, and thus susceptible to challenge as the "most adequate plaintiff."

However, the Court is unaware of any authority holding that a class member's failure to challenge the presumptive lead plaintiff's suitability to serve as lead plaintiff forever bars that class member from subsequently moving to fill in as lead plaintiff where the original lead plaintiff's claims have been dismissed. The Eastern District of Pennsylvania's opinion in *In re Cigna Corp. Securities Litigation* suggests that the opposite is true. 2005 WL 3952802 (E.D. Pa. Feb. 23, 2005). In that case, which had been proceeding for over three years, the lead plaintiff moved the court to allow two other putative class members to intervene as additional proposed class representatives. *Id*. at *1. The motion was motivated by the concern that the current lead plaintiff had not suffered "loss causation" and was therefor vulnerable to a summary judgment motion expected to be filed by the defendants. *Id*. The court concluded that this was a worthy reason to permit the intervention, "[g]iven the significance that the PSLRA has placed on the status and responsibility of the Lead Plaintiff in this type of case, and the fact that many putative class members have appropriately assumed that [the current lead plaintiff] will adequately represent the class[.]" *Id.* (citations omitted). In the event the defendants prevailed on their summary judgment motion against the lead plaintiff, the court held that "such a result should not cause termination of the entire case if other

putative class members are willing, able and ready to step forward as class representatives and also as Lead Plaintiffs and can prove loss causation and/or economic loss." *Id.* at *2; *see also Z-Seven Fund, Inc., v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218 (9th Cir. 2000) ("It is not inconceivable that a lead plaintiff appointed originally might turn out to be an inadequate class representative and that a change might have to be made.").

In this case, while Plaintiffs did not formally move to have Alldian intervene as a lead plaintiff or class representative prior to the Court's disposition of Defendants' motion to dismiss, they did indicate, in a footnote in their response to Defendants' motion, that Alldian was ready to step in Cucinotta's shoes should Cucinotta's claims fail on loss causation grounds. (Pls.' Resp. Brief to Defs.' Mot. Dismiss at 14 n.15). Perhaps it would have been to Plaintiffs' counsel's greater credit had Plaintiffs withdrawn their opposition to Defendants' motion to dismiss well in advance of the August 31, 2005 hearing on that motion and moved instead to substitute Alldian as lead plaintiff at that earlier time. Such a course would have obviated the needless waste of judicial resources and expenditure of the Defendants' time and money. That said, given that Alldian was put forward as a possible alternative lead plaintiff in Plaintiffs' responsive briefing, Plaintiffs' present effort to substitute Alldian as lead plaintiff cannot come as a surprise to Defendants. Considering all the circumstances, although Alldian surely should have moved for substitution with greater alacrity than she did, and arguably should have challenged Cucinotta's appointment as lead plaintiff on loss causation grounds, the Court finds that the interests of the potential class members in bringing their claims outweigh the delay caused by Alldian's actions or inactions and any resultant prejudice suffered by the Defendants.

C.     **Whether to Require the Republication of Notice**

The Court finds it unnecessary under these circumstances to restart the notice process. As stated by the *IPO Litigation* Court:

> [W]here a new lead plaintiff is willing to step forward, there is no need to start the [notice] process anew when all putative class members were given notice of the opportunity to move for appointment as lead plaintiff by means of the statutorily required published notice[.] If other plaintiffs had filed a lawsuit or originally moved to be appointed lead plaintiff – *i.e.*, moved for appointment as lead plaintiff in response to the initial notice of pendency – then those plaintiffs would arguably be entitled to priority over any other potential lead plaintiffs.

*See In re Initial Public Offering Sec. Litig.*, 214 F.R.D. at 120 n.5. Here, TDH's initial publication of notice informed potential class members of the pendency of the suit and that applications for appointment as lead plaintiff could be filed within 60 days of the publication of that notice. Aside from Cucinotta, the only other purported class member to move for appointment was Lorra L. Rudman. Cucinotta and Rudman were also the only plaintiffs to join the CAC, and both of their claims were dismissed by the Court for failure to plead loss causation. Therefore, in deciding on a substitute "most adequate" lead plaintiff, the Court will consider only those plaintiffs who have filed a complaint and who have not been expressly dismissed from the case: TDH, DuBray, Alldian, and Pipefitters. *See In re Microstrategy*, 110 F.Supp.2d at 432 n.8 (any party filing one of multiple complaints may be named lead plaintiff despite reference in the PSLRA to the filing of "the" complaint).

According to the certifications attached to each of these respective complaints, only DuBray and Alldian indicate that they sold their Ryland shares after the "truth began to emerge." TDH's certification simply states that TDH purchased 20 shares on November 3, 2003 and Pipefitters's

15

certification simply states that Pipefitters purchased 1000 shares on December 2, 2003. Before this action proceeds further, the Court must be certain that the claims asserted by TDH and Pipefitters adequately allege loss causation. As this determination is impossible to make based on the certifications currently on file, the Court will order both TDH and Pipefitters to file, within 10 days of the date of this order, amended certifications detailing their respective transactions in Ryland stock, including whether, and if applicable, when, they sold their shares. Despite the lack of full information just described, the Court nevertheless believes it can appoint a lead plaintiff based on the certifications on file, and it now turns to that determination.

**D.     Largest Financial Interest**

The PSLRA does not provide guidance as to how the court is to determine whether a person has the "largest financial interest". *See Schulman v. Lumenis, Ltd.*, 2003 WL 21415287, at *5 (S.D.N.Y. June 18, 2003). To fill this void, courts have considered the following four factors: 1) the number of shares purchased; 2) the number of net shares purchased; 3) the total net funds expended by the plaintiffs during the class period; and 4) the approximate losses suffered by the plaintiffs. *See e.g., In re Enron Corp. Sec. Litig.*, 206 F.R.D. at 440. Applying these factors, the Court concludes that Alldian has the largest financial interest of any of the remaining plaintiffs that have filed a complaint.

As noted by Judge Fish in his May 20, 2004 Memorandum Order, although it is impossible to ascertain the amount of TDH's purported loss from its certification alone, its loss cannot exceed the $1727.80 purchase price of its shares. (May 20, 2004 Memorandum Order at 11). Similarly, Pipefitters's loss cannot be gleaned from the certification it filed, which simply indicates that Pipefitters acquired 1000 shares at a price of $45.39 per share on December 2, 2003 for a total cost

of $45,390. DuBray purchased 400 shares at a cost of $92.45 per share and 100 shares at $92.41 per share, brining her total cost to $46,221. DuBray sold her 500 shares on February 6, 2004, after the alleged "truth" came out on January 8, 2004, for $39,605. She thus suffered a loss of $6,616.00. Finally, Alldian's certification indicates that she purchased 500 shares on November 21, 2003 for a price of $43,473.95 and that she sold those shares on December 2, 2003 for $45,862.90, for a gain of $2,388.95. She then purchased 1000 shares on December 29, 2003 for a price of $92,075.95 and sold those shares on January 9, 2004 – after the "truthful" disclosure – for $73,559.60. Alldian thus suffered a $18,516.35 loss on those shares.[5]

Therefore, of all the remaining plaintiffs who filed complaints, Alldian clearly expended the most money during the class period and purchased the greatest number of shares. She also suffered a greater loss than DuBray and TDH, and possibly Pipefitters. Considering all of the "largest financial interest" factors as a whole, the Court concludes that Alldian has the largest financial interest among the remaining plaintiffs who have filed complaints.

E.     Rule 23 Requirements

The Rule 23 inquiry is considerably relaxed at this stage of the inquiry; stricter scrutiny is reserved until the class certification stage. *In re Enron*, 206 F.R.D. at 204. For the same reasons that Judge Fish found that Cucinotta was an appropriate lead plaintiff, this Court finds that Alldian appears to meet the adequacy and typicality requirements of Rule 23, as her claims stem from the same conduct of Ryland from which the other class members' claims arise, and the extent of her loss is such to ensure vigorous advocacy. *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 296 (E.D.N.Y.

---

[5] Alldian states that her losses exceeded $20,000 (Pl. Alldian's Mot. Substitution at 5), but she fails to explain how she arrived at that figure.

1998).

In light of the foregoing analysis, the Court finds that Alldian is the next most adequate plaintiff now that Cucinotta has been disqualified from serving in that capacity, and it hereby appoints Alldian as lead plaintiff.

**F.      Appointment of Lead Counsel**

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the Court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Alldian has chosen the Brodsky and Smith, L.L.C. law firm as her lead counsel and Newman, Davenport and Epstein, P.C. as liaison counsel, the same firms formerly selected by Cucinotta. "Giving the lead plaintiff primary control for the selection of counsel was a critical part of Congress's effort to transfer control of securities class actions from lawyers to investors." *Gluck v. Cellstar Corp.*, 976 F.Supp. 542, 550 (N.D. Tex. 1997). The Court can discern no reason to upset Alldian's choice here.

**G.      Plaintiffs' Motion for Reconsideration**

Plaintiffs have also pointed out that this Court's September 1, 2005 order dismissing the CAC fails to specify whether that dismissal was with or without prejudice. Plaintiffs seek to have the Court affirmatively state that the dismissal was without prejudice. The Court now clarifies that the dismissal of the CAC was without prejudice pending this Court's consideration of whether Alldian should be allowed to replace Cucinotta as lead plaintiff. However, the claims asserted by Plaintiffs Cucinotta and Rudman were intended to be, and are hereby, dismissed with prejudice for failure to plead loss causation.

### III. Conclusion

For the foregoing reasons, the Court GRANTS Plaintiff Alldian's Motion for Substitution as Lead Plaintiff (doc. 40). Plaintiff Jennifer Alldian is hereby appointed as Lead Plaintiff. Within 10 days of the date of this order the parties are ORDERED to file a joint report listing each party's respective positions on the status of this case going forward. The report shall also state whether any of the remaining consolidated actions fail to adequately allege loss causation in light of *Dura*. In the report Plaintiffs shall further explain why Plaintiffs TDH and DuBray did not join the original CAC. The Court further ORDERS Plaintiffs TDH and Pipefitters to file, within 10 days of the date of this order, amended certifications detailing their respective transactions in Ryland stock, including whether and, if applicable, when, they sold their shares in Ryland stock.

The Court further GRANTS in part Plaintiffs' Motion for Reconsideration (doc. 41). The Court hereby clarifies its September 1, 2005 order dismissing the CAC as follows: The CAC is dismissed without prejudice; however, the claims of Plaintiffs Cucinotta and Rudman are dismissed with prejudice.

**SO ORDERED.**

**Signed June 2nd , 2006.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE